**PACIFIC M. INTERNATIONAL CORP., Plaintiff,**

v.

**RAMAN INTERNATIONAL GEMS, LTD., et al., Defendants.**

**No. 10 Civ. 9250 (DAB).**

United States District Court, S.D. New York.

Aug. 7, 2012.

John David Lovi, Steptoe & Johnson, LLP, New York, NY, for Plaintiff.

Raman Yosupov, New York, NY, pro se.

*ADOPTION OF REPORT AND RECOMMENDATION*

DEBORAH A. BATTS, District Judge.

This matter is before the Court upon the July 20, 2012 Report and Recommendation of United States Magistrate Judge Henry

B. Pitman ("Report"). Judge Pitman's Report recommends that (1) Plaintiff's Motion for a Default Judgment against Raman International be granted in part and denied in part; and (2) Plaintiff's Motion for Summary Judgment against Yosupov be Specifically, Judge Pitman's Report recommends that Default Judgment in the amount of $500,000.00 be entered against Raman International only as to Plaintiff's conversion claim and a Default Judgment entered only as to Plaintiff's breach of contract claim. Judge Pitman further recommends that Summary Judgment be granted against Defendant Yosupov only as to Plaintiff's conversion claim and that Judgment be entered against him in the amount of $602,760.42. (Report at 2.)

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[w]ithin fourteen days after being served with a copy [of a Magistrate Judge's Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations ..." 28 U.S.C. § 636(b)(1)(C); *see also* Fed.R.Civ.P. 72(b)(2). The district court may adopt those portions of the report to which no timely objection has been made, so long as there is no clear error on the face of the record. *See* 28 U.S.C. § 636(b)(1)(A); *Wilds v. United Parcel Serv., Inc.,* 262 F.Supp.2d 163, 169 (S.D.N.Y.2003). To date, no objections to said Report and Recommendation have been filed.

Having reviewed the Report and Recommendation and finding no clear error on the face of the record, it is hereby ORDERED AND ADJUDGED as follows:

1. The Report and Recommendation of United States Magistrate Judge Henry B. Pitman dated July 20, 2012 be and the same hereby is APPROVED, ADOPTED, and RATIFIED by the Court in its entirety;

2. Pursuant to Magistrate Judge Pitman's recommendation, Default Judgment in the amount of $500,000.00 is hereby entered against Raman International only as to Plaintiff's conversion claim; Default Judgment only is hereby entered as to Plaintiff's breach of contract claim; Summary Judgment is hereby granted against Defendant Yosupov only as to Plaintiff's conversion claim; and Judgment is hereby entered against Defendant Yosupov in the amount of $602,760.42.

SO ORDERED.

## REPORT AND RECOMMENDATION

PITMAN, United States Magistrate Judge:

TO THE HONORABLE DEBORAH A. BATTS, United States District Judge,

### I. *Introduction*

This is an action for breach of contract, conversion and fraud arising out of a putative agreement among plaintiff Pacific M. International Corp. ("Pacific Int'l"), defendant Raman International Gems, Ltd. ("Raman Int'l") and defendant Raman Yosupov concerning a 12.24 carat diamond (the "Diamond").

By notices of motion dated September 30, 2011 (Docket Items 12, 13 and 15), plaintiff moves for (1) the entry of a default judgment against Raman Int'l on its breach of contract, conversion and fraud claims and (2) summary judgment against Yosupov on the same claims. Raman Int'l has neither retained counsel in this action nor responded to the Complaint. Yosupov has filed an Answer to the Complaint (Docket Item 6), but has not submitted any opposition to plaintiff's motion for summary judgment.

For the reasons set forth below, I respectfully recommend that (1) plaintiff's motion for a default judgment against Raman Int'l be granted in part and denied in part and (2) plaintiff's motion for summary

judgment against Yosupov be granted in part and denied in part. Specifically, I recommend that a default judgment in the amount of $500,000.00 be entered against Raman Int'l only as to plaintiff's conversion claim and a default entered only as to plaintiff's breach of contract claim. I further recommend that summary judgment be granted against Yosupov only as to plaintiff's conversion claim and that judgment be entered against him in the amount of $602,760.42.

## II. *Facts*

### A. *Plaintiff's Allegations*

Plaintiff's complaint alleges the following facts. Plaintiff, a wholesale seller of diamonds, is a California corporation with its principal place of business located in Los Angeles, California (Complaint, dated Dec. 10, 2010 ("Compl.") (Docket Item 1), ¶ 2). Plaintiff alleges that it owns the Diamond at issue in this action, *i.e.*, a "12.24 ct. diamond (grade: I–VVS2) with GIA Report No. 14174122" (Compl. ¶ 7).

Yosupov, a New York resident, is the owner and principal of Raman Int'l, a New York company with its principal place of business also located in New York, New York (Compl. ¶¶ 3–4). Raman Int'l is a wholesale and retail seller of diamonds and jewelry (Compl. ¶ 3).

In July 2009, Raman Int'l and Yosupov (collectively, the "Defendants") allegedly contacted plaintiff about the Diamond (Compl. ¶ 8). The Defendants informed plaintiff that they had a customer who was interested in purchasing the Diamond; however, the customer wanted to view the Diamond in New York (Compl. ¶ 8). On or about July 29, 2009, in order to accommodate this request, plaintiff shipped the Diamond to the Defendants "pursuant to a Memorandum that memorialized the transaction, described the Diamond, and indicated its value at $525,320.00" (Compl. ¶ 9). The Memorandum also "made clear that the Diamond remained the property of [plaintiff] and 'shall be returned on demand in full in its original form'" (Compl. ¶ 10). Plaintiff alleges that it is "quite common" within the diamond trade for a dealer to consign a diamond to another dealer in this manner and that the Defendants "accepted and agreed to the terms of the Memorandum" (Compl. ¶¶ 9–10).

Finally, plaintiff alleges that (1) despite repeated demands, the Defendants have not returned the Diamond and (2) the Defendants' statements in July 2009 that they (a) "wanted the Diamond to show to a Russian diplomat customer who was interested in purchasing the Diamond" and (b) "were willing and able to return the Diamond to [plaintiff] immediately upon demand" were false and misleading and made for the purpose of inducing plaintiff to lend the Diamond to the Defendants (Compl. ¶¶ 11, 24–25).

Based on the above facts, plaintiff seeks: (1) an Order of the Court directing the Defendants to immediately return the Diamond to plaintiff; (2) compensatory damages in an amount to be determined; (3) punitive damages in the amount of $500,000.00 and (4) legal fees and costs incurred in connection with this action (Compl. at 5).

### B. *Facts Plaintiff Claims Are Established by Discovery*

Plaintiff has submitted a statement pursuant to Local Civil Rule 56.1 and contends that the facts contained therein have been established either through discovery or by the declaration that it has submitted in connection with the pending motion for summary judgment (Docket Items 16 and 17). However, because both plaintiff's Rule 56.1 statement and corresponding declaration primarily set forth an abbreviated version of the facts alleged in the Complaint, I do not recite them again

here. Instead, I set forth below only the additional material facts contained in these documents.

First, plaintiff contends that Yosupov concedes the following facts in his Answer: (1) he received the Diamond from plaintiff; (2) plaintiff requested that he return the Diamond and (3) he has not returned the Diamond (Declaration of Issac Musighi, dated Sept. 30, 2011 ("Musighi Decl.") (Docket Item 17), ¶ 7, *citing* Ex. C to Musighi Decl.).

Second, plaintiff contends that, during a pre-trial conference which I held on March 24, 2011 (the "March 24 Conference"), "Yosupov told [this] Court that he was responsible for the diamond, but that he had given it to a customer who lives outside the United States and has not been able to get [it] back . . . ." [1] (Musighi Decl. ¶ 8).

Finally, plaintiff contends that "[t]he agreed upon value of the diamond is $43,000 per carat weight, for a total value of $526,320.00" [2] (Musighi Decl. ¶ 11).

## C. *Relevant Procedural History*

Plaintiff filed its summary judgment motion on September 30, 2011 and served

Yosupov with the motion and the notice to *pro se* litigants required by Local Civil Rule 56.2. In pertinent part, this notice informed Yosupov that:

THE CLAIMS ASSERTED IN THE PLAINTIFF'S COMPLAINT MAY BE GRANTED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing sworn affidavits and other papers as required by Rule 56(e) of the Federal Rules of Civil Procedure and by Local Civil Rule 56.1.

\* \* \*

In short, Rule 56 provides that you MAY NOT oppose summary judgment simply by relying upon the allegations in your answer. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the plaintiff and raising material issues of fact for trial.

\* \* \*

If you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the material facts asserted by the plaintiff, the court may accept plaintiff's factual allegations as true. Judgment

[1]. During the March 24 Conference, Yosupov conceded the following facts on the record: (1) he received the Diamond from plaintiff, (2) the Diamond was, as of that date, in Russia with a customer and (3) he had not paid plaintiff for the Diamond. As a result of this conference, I directed that:

No later than April 7, 2011, defendant Yosupov shall provide plaintiff's counsel with the identity and contact information of the person, persons or entities that currently possesses the diamond that is the subject of this action. As I explained to plaintiff in court, this information is not privileged and the desire of the possessor of the diamond to remain anonymous does not give rise to any legal protection. Moreover, the individual with possession of the diamond can remain anonymous by simply returning the diamond to defendant for re-delivery to plaintiff.

(Docket Item 11). Yosupov, however, has not complied with this Order (Musighi Decl. ¶¶ 9–10).

[2]. This figure differs slightly from the value of the Diamond alleged in the Complaint; there, plaintiff alleges that the value is $525,320.00 (*see* Compl. ¶ 9). Additionally, in plaintiff's Rule 56.1 Statement, the "liquidated value of the Diamond" is alleged to be $535,320.00 (*see* Rule 56.1 Statement, dated Sept. 30, 2011 ("Rule 56.1 Statement") (Docket Item 16), ¶ 11). It appears that $526,320.00 is the correct valuation as the Memorandum sets forth the value of the Diamond as $43,000.00 per carat and identifies the Diamond as a 12.24 carat diamond (*see* Ex. B to Musighi Decl.). The product of these two numbers is $526,320.00.

may then be entered into plaintiff's favor without trial.

(Ex. A to Docket Item 15). Despite having been advised of what he must do to respond to plaintiff's motion, Yosupov has not submitted any opposition papers. Accordingly, I consider plaintiff's motion for summary judgment to be ripe for decision.

### III. Analysis

#### A. Default Judgment Standards

The Court of Appeals for the Second Circuit succinctly set forth the procedural rules applicable to the entry of a default judgment in *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128–29 (2d Cir.2011):

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir.2004). Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir.2005).
>
> The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. The entry of default is governed by Rule 55(a), which provides:
>
> > When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise de-

fend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed.R.Civ.P. 55(a). Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, *see Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1152 n. 11 (2d Cir.1995) (describing "the entry of a default" as "largely a formal matter" (internal quotation marks omitted)), a district judge also possesses the inherent power to enter a default, *see Beller & Keller v. Tyler*, 120 F.3d 21, 22 n. 1 (2d Cir.1997). The entry of a default, while establishing liability, "is not an admission of damages." *Finkel v. Romanowicz*, 577 F.3d 79, 83 n. 6 (2d Cir.2009).

> The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c).[3] Under Rule 55(b), a default judgment ordinarily must be entered by the district judge, rather than by the clerk of court, except in certain circumstances provided for by the rule and not present here.[4] A district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to "conduct hearings or make referrals" as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations. Fed.R.Civ.P. 55(b)(2)(B)-(C). "A default judgment is a final action by the

---

**3.** "Rule 54(c) provides that '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.' " *City of New York v. Mickalis Pawn Shop, LLC, supra*, 645 F.3d at 128 n. 16, *quoting* Fed.R.Civ.P. 54(c) *and citing Silge v. Merz*, 510 F.3d 157, 161 (2d Cir.2007).

**4.** "Rule 55(b)(1) permits entry of judgment by the clerk of court, without involvement of a

judge, in circumstances where 'the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person.' ... Rule 55(b)(2) governs '[i]n all other cases,' ... including this one." *City of New York v. Mickalis Pawn Shop, LLC, supra*, 645 F.3d at 128–29 n. 17, *quoting New York v. Green*, 420 F.3d 99, 104 (2d Cir.2005).

district court in the litigation [and] one that may be appealed." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993).

Because [this Circuit] ha[s] "a strong preference for resolving disputes on the merits," and because "a default judgment is the most severe sanction which the court may apply," *Green,* 420 F.3d at 104 (internal quotation marks omitted), we have characterized a district court's discretion in proceeding under Rule 55 as "circumscribed." *Enron Oil Corp.,* 10 F.3d at 95; *see also State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 168 (2d Cir.2004) ("Default judgments 'are generally disfavored and are reserved for rare occasions.'" (*quoting Enron Oil Corp.,* 10 F.3d at 96)), *cert. denied,* 543 U.S. 1177, 125 S.Ct. 1309, 161 L.Ed.2d 161 (2005). *See also Stein v. Valentine & Kebartas, Inc.,* 10 CV 2465(RJD), 2012 WL 1416924 at *2 (E.D.N.Y. Mar. 15, 2012) (Report and Recommendation), *adopted at,* 2012 WL 1416901 (E.D.N.Y. Apr. 24, 2012); *Saleh v. Francesco,* 11 Civ. 438(PKC), 2011 WL 5513375 at *2–*3 (S.D.N.Y. Nov. 10, 2011) (Castel, D.J.); *Coach, Inc. v. O'Brien,* 10 Civ. 6071(GBD)(JLC), 2011 WL 3462317 at *2 (S.D.N.Y. July 27, 2011) (Cott, M.J.) (Report and Recommendation), *adopted at,* 2011 WL 4001002 (S.D.N.Y. Sept. 01, 2011) (Daniels, D.J.); *Lemus v. Manhattan Car Wash, Inc.,* 06 Civ. 15486(MHD), 2010 WL 4968182 at *6–*7 (S.D.N.Y. Nov. 24, 2010) (Dolinger, M.J.) (Memorandum and Order); *O'Callaghan v. Sifre,* 242 F.R.D. 69, 72–73 (S.D.N.Y. 2007) (Marrero, D.J. adopting Report and Recommendation of Freeman, M.J.).

■ Moreover, "'[b]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted ..., the doubt should be resolved in favor of the defaulting party.'" *In re Suprema*

*Specialties, Inc.,* 330 B.R. 40, 44–45 (S.D.N.Y.2005) (Lynch, then D.J., now Cir. J.), *quoting Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993); *see also Stein v. Valentine & Kebartas, Inc., supra,* 2012 WL 1416924 at *2; *Coach, Inc. v. O'Brien, supra,* 2011 WL 3462317 at *2; *O'Callaghan v. Sifre, supra,* 242 F.R.D. at 73.

■ Notwithstanding this, however, "[t]he Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the Complaint thereby placing the defendant on notice, ...; and (3) the amount of money potentially involved-the more money involved, the less justification for entering the default judgment." *Stein v. Valentine & Kebartas, Inc., supra,* 2012 WL 1416924 at *2, *citing* Fed.R.Civ.P. 54(c); *King v. STL Consulting LLC,* 05 CV 2719, 2006 WL 3335115 at *4–*5 (E.D.N.Y. Oct. 3, 2006) *and Hirsch v. Innovation Int'l, Inc.,* 91 Civ. 4130(MJL), 1992 WL 316143 at *2 (S.D.N.Y. Oct. 19, 1992) (Lowe, D.J.).

■ In addition, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant." *Stein v. Valentine & Kebartas, Inc., supra,* 2012 WL 1416924 at *2, *citing Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65–66 (2d Cir.1981).

■ Finally, "[a] default judgment is inappropriate where a plaintiff has failed to state a cause of action against the allegedly defaulting defendant, regardless of whether the defendant filed a prompt response, or any response at all." *Young–*

*Flynn v. Wright,* 05 Civ. 1488(LAK), 2007 WL 241332 at *24 (S.D.N.Y. Jan. 26, 2007) (Kaplan, D.J.), *citing Kee v. Hasty,* 01 Civ. 2123(KMW) (DF), 2004 WL 807071 at *4 (S.D.N.Y. Apr. 14, 2001) (Freeman, M.J.) (Report and Recommendation); *see also CPF Premium Funding, Inc. v. Ferrarini,* 95 Civ. 4621(CSH), 1997 WL 158361 at *14 (S.D.N.Y. Apr. 3, 1997) (Haight, D.J.).

### B. *Summary Judgment Standards*

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c) .... This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact. An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990). Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993). If the nonmovant fails to meet this burden, summary judgment will be granted against it. *Gallo v.*

*Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

*Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir.2004); *accord Jeffreys v. City of New York,* 426 F.3d 549, 553–54 (2d Cir.2005); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223–24 (2d Cir.1994).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Coppola v. Bear Stearns & Co.,* 499 F.3d 144, 148 (2d Cir.2007), *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'" *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 788 (2d Cir.2007), *quoting Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 298 (2d Cir. 1996).

The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists .... In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant .... Stated more succinctly, "[t]he evidence of the non-movant is to be believed."

*Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 253–54 (2d Cir.2002) (citations omitted); *see also Jeffreys v. City of New York, supra,* 426 F.3d at 553 ("'Assessments of credibility and choices between conflicting versions of the events are mat-

ters for the jury, not for the court on summary judgment.'"), *quoting Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996); *accord Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003).

The Second Circuit has also explained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003). Finally, even where, as here, a summary judgment motion is unopposed, the Court must examine the record to determine whether a genuine issue of fact exists for trial; a summary judgment motion cannot be granted on default. *Vermont Teddy Bear Co. v. 1–800 Beargram Co., supra*, 373 F.3d at 244.

### C. *Application of the Foregoing Principles*

As explained in greater detail below, because Yosupov is the owner and principal of Raman Int'l, the appropriateness of a default judgment against the corporation is closely related to the outcome of plaintiff's motion for summary judgment

against Yosupov individually. Accordingly, I shall first address plaintiff's motion for summary judgment.

### 1. *Plaintiff's Summary Judgment Motion Against Yosupov*[5]

#### a. *Breach of Contract*

 "'To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound.'" *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009), *quoting Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir.2004). Establishing "a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *citing First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir.1998) *and Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996).

The predicate for plaintiff's breach of contract claim is the Memorandum, which plaintiff has attached as Exhibit B to the Musighi Declaration. However, the copy of the Memorandum that plaintiff has submitted is, for the most part, not legible.[6] As a result, it is impossible to (1) ascertain the precise terms of the Memorandum, (2) ascertain the parties to the Memorandum[7] and (3) determine whether, based on those terms and the rest of the record in this action, there exists a genuine issue of ma-

---

**5.** Neither party has submitted a memorandum of law in connection with plaintiff's motion for summary judgment nor contended that the law of any other forum applies. Accordingly, I assume that New York substantive law applies to this matter.

**6.** Exhibit B to the Musighi Declaration is a photocopy of poor quality. In addition, the font size used in the Memorandum is extremely small.

**7.** It is unclear from the Memorandum whether Yosupov is a party to the putative contract in his individual capacity. For example, the Memorandum is addressed to only Raman Int'l and plaintiff has not alleged an alter ego theory of liability in the Complaint. However, because the terms of the Memorandum are not legible, I need not address this issue further.

terial fact which would preclude granting summary judgment in plaintiff's favor.

Accordingly, on the basis of the foregoing, I recommend that plaintiff's motion for summary judgment as to Yosupov on plaintiff's contract claim be denied without prejudice to renewal.

### b. *Conversion*

■■■■ The Second Circuit succinctly set forth the standards applicable to a claim for conversion under New York law in *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir.2006):

According to New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995) (internal quotation marks omitted). This includes a "denial or violation of the plaintiff's dominion, rights, or possession" over her property. *Sporn* [*v. MCA Records, Inc.*], 58 N.Y.2d [482] at 487, 462 N.Y.S.2d 413, 448 N.E.2d 1324 [ (1983) ]. It also requires that the defendant exclude the owner from exercising her rights over the goods. *New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 774 N.E.2d 702 (2002).

*See also Cruz v. TD Bank, N.A.*, 855 F.Supp.2d 157, 174 (S.D.N.Y.2012) (Castel, D.J.); *Goodman v. Port Auth. of New York and New Jersey*, 850 F.Supp.2d 363, 376–77 (S.D.N.Y.2012) (Sweet, D.J.); *Soroof Trading Dev. Co., Ltd. v. GE Fuel Sys., LLC*, 842 F.Supp.2d 502, 513–14 (S.D.N.Y.2012) (Swain, D.J.).

■■■■ " 'Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs [sic] rights.' " *Cruz v. TD Bank, N.A.*, *supra*, 855 F.Supp.2d at 174, *quoting Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 100, 860 N.E.2d 713, 717 (2006). Additionally, "[a] plaintiff alleging conversion need not show fault by the defendant." *Cruz v. TD Bank, N.A.*, *supra*, 2012 WL 694267 at *11, *citing LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir.1997).

■■■■ " 'Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property.' " *Thyroff v. Nationwide Mut. Ins. Co.*, 360 Fed.Appx. 179, 180 (2d Cir.2010), *quoting Seanto Exps. v. United Arab Agencies*, 137 F.Supp.2d 445, 451 (S.D.N.Y.2001) (Motley, D.J.); *see also Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir.1993).

■■■■ Finally, " '[t]o state a claim of conversion, the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused.' " *Soroof Trading Dev. Co., Ltd. v. GE Fuel Sys., LLC*, *supra*, 842 F.Supp.2d at 514, *quoting Lefkowitz v. Bank of New York*, 676 F.Supp.2d 229, 251 (S.D.N.Y.2009) (Marrero, D.J. adopting the Report and Recommendation of Dolinger, M.J.); *see also Goodman v. Port Auth. of New York and New Jersey*, *supra*, 850 F.Supp.2d at 376; *Seanto Exps. v. United Arab Agencies*, *supra*, 137 F.Supp.2d at 451.

■■■■ Summary judgment against Yosupov on plaintiff's conversion claim is appropriate. There is no genuine dispute with respect to the following material facts, which Yosupov has either admitted in his Answer or on the record during the March 24 Conference: (1) plaintiff shipped the Diamond to Yosupov at Raman Int'l on or

about July 29, 2009; (2) Yosupov thereafter gave the Diamond to a customer; (3) at least as of the March 24 Conference, the customer had the Diamond with him in Russia; (4) plaintiff made multiple demands for the return of the Diamond; (5) Yosupov failed to comply with my Order dated March 28, 2010 directing that either the Diamond be returned to plaintiff or the identity of the customer disclosed and (6) to date, Yosupov has not returned the Diamond nor paid for it. By virtue of the foregoing conduct, the elements of conversion have been established. Specifically, Yosupov has, without authorization, interfered with plaintiff's personal property rights in the Diamond. Yosupov has also refused to return the Diamond despite plaintiff's multiple demands for the property.

█ Accordingly, on the basis of the foregoing, I recommend that plaintiff's motion for summary judgment be granted as to its conversion claim.[8] Plaintiff is entitled to either the return of the Diamond or payment in the amount of the value of the Diamond.

#### c. *Fraud*

█ Under New York law, a claim for fraud requires proof that " '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.' " *Wall v. CSX Transp., Inc.,* 471 F.3d 410, 415–16 (2d Cir.2006), *quoting Bridgestone/Firestone Inc. v. Recovery Credit Servs. Inc.,* 98 F.3d 13, 19 (2d Cir.1996).

█ However, a claim for fraud cannot be maintained where it "arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations." *PI, Inc. v. Quality Prods., Inc.,* 907 F.Supp. 752, 761 (S.D.N.Y.1995) (Koeltl, D.J.); *see also Rojas v. Don King Prod., Inc.,* 11 Civ. 8468(KBF), 2012 WL 760336 at *4 (S.D.N.Y. Mar. 6, 2012) (Forrest, D.J.); *Sudul v. Computer Outsourcing Servs.,* 868 F.Supp. 59, 62 (S.D.N.Y.1994) (Martin, D.J.). Rather, "under New York law, parallel fraud and contract claims may be brought only if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171, 183 (2d Cir.2007), *citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., supra,* 98 F.3d at 20; *see also Rojas v. Don King Prod., Inc., supra,* 2012 WL 760336 at *4.

---

**8.** It is the case that, under New York law, "a claim of conversion cannot be predicated on a mere breach of contract." *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.,* 07 Civ. 9694(LAP), 2009 WL 1110783 at *3 (S.D.N.Y. Apr. 21, 2009) (Preska, D.J.) (internal quotation marks and citations omitted); *Gould Paper Corp. v. Madisen Corp.,* 614 F.Supp.2d 485, 493 (S.D.N.Y.2009) (Chin, then D.J., now Cir. J.), *citing Citadel Mgmt., Inc. v. Telesis Trust, Inc.,* 123 F.Supp.2d 133, 148 (S.D.N.Y. 2000) (Sweet, D.J.) *and Newman v. Mor,* 08 CV 658(RJD)(CLP), 2009 WL 890552 at *4 (E.D.N.Y. Mar. 31, 2009); *see also Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,* 837 F.Supp.2d 162, 197–98 (S.D.N.Y. 2011) (Sullivan, D.J.). Here, plaintiff's claims for breach of contract and conversion are based on the same facts. However, because the elements of plaintiff's claim for conversion are clearly established and the putative contract in this action is not legible, the presence of the contract claim is not a basis upon which to deny plaintiff summary judgment on its conversion claim.

Plaintiff contends that Yosupov's statements in July 2009—(1) that he needed the Diamond to show to a potential customer and (2) that he was willing and able to return the Diamond upon demand—were false and misleading and made with the intention of inducing plaintiff to lend the Diamond. These statements, however, are precisely the terms of the putative contract at issue in this action. Simply put, plaintiff's fraud claim fails because plaintiff has not alleged that Yosupov had a legal duty apart from his contractual duty nor has plaintiff specified any damage that occurred as a result of the fraud that is not recoverable as contract damages. Again, the statements at issue are not collateral to the contract but are instead essential terms of the contract. A representation is collateral to a contract when it pertains to present facts and not "promissory statement[s] of what will be done in the future." *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., supra,* 500 F.3d at 184, *citing Stewart v. Jackson & Nash,* 976 F.2d 86, 88–89 (2d Cir.1992).

Accordingly, on the basis of the foregoing, I recommend that plaintiff's motion for summary judgment be denied as to its fraud claim.

2. *Plaintiff's Motion for a Default Judgment Against Raman Int'l*

Because Raman Int'l is a corporation, it must be represented by counsel. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–03, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); *Grace v. Bank Leumi Trust Co. of New York,* 443 F.3d 180, 192 (2d Cir.2006); *Jacobs v. Patent Enforcement Fund, Inc.,* 230 F.3d 565, 568 (2d Cir.2000).

Here, plaintiff served Raman Int'l with the Summons and Complaint on December 21, 2010 by delivering each document to the New York Secretary of State (Docket Item 5; *see also* Declaration for Judgement [*sic* ] By Default, dated Sept. 30, 2011 ("Decl. for Default J.") (Docket Item 14), ¶ 5, *citing* Exs. A and B to Decl. for Default J.). It is undisputed that Raman Int'l has not retained counsel in this action despite being directed to do so by Judge Batts on February 7, 2011 and by myself on March 28, 2011 (Docket Item 7 at 1–2; Docket Item 11 at ¶ 3). Plaintiff seeks a default judgment against Raman Int'l on its breach of contract, conversion and fraud claims based on its failure to comply with these two Orders.

With respect to plaintiff's claim for fraud, a default judgment should not be entered because plaintiff fails to state a claim. Plaintiff's fraud claim is based on the theory that the Defendants misrepresented their intent to perform the contract. As explained above at pages 20–22, such allegations do not state a claim for fraud. *See Stein v. Valentine & Kebartas, Inc., supra,* 2012 WL 1416924 at *2 (noting that, in determining whether a default judgment is appropriate, a court may consider whether the facts alleged in the complaint state a valid claim); *see also Young–Flynn v. Wright, supra,* 2007 WL 241332 at *24; *Kee v. Hasty, supra,* 2004 WL 807071 at *4; *CPF Premium Funding Inc. v. Ferrarini, supra,* 1997 WL 158361 at *14. Accordingly, plaintiff's motion for a default judgment as to its claim for fraud should be denied.

Default judgment is appropriate, however, as to plaintiff's claim for conversion. Plaintiff's conversion claim against Raman Int'l is based on the same facts as its conversion claim against Yosupov. Thus, for the same reasons already discussed at pages 17–20, the elements of conversion have also been established against Raman Int'l. Accordingly, plaintiff's motion for a default judgment as to its claim for conversion should be granted.

Finally, with respect to plaintiff's claim for breach of contract, in order to prevent

the possibility of inconsistent judgments in this action, only a default should be entered against Raman Int'l. It appears from the Complaint that plaintiff is seeking joint and several liability against Raman Int'l and Yosupov for the putative breach of contract concerning the Diamond. "Under these circumstances, a default judgment specifying an amount of damages against the defaulting defendant [ ] would be premature, and must await the determination of the merits of the claims against the non-defaulting defendant." *Friedman v. Lawrence*, 90 Civ. 5584(VLB), 1991 WL 206308 at *1 (S.D.N.Y. Oct. 2, 1991) (Dolinger, M.J.) (Memorandum and Order). As explained by the Honorable Michael H. Dolinger, United States Magistrate Judge, in *Friedman v. Lawrence, supra,* 1991 WL 206308 at *2 (citations omitted):

> The principles governing the default of some but not all defendants in a litigation derive from the 1872 decision of the Supreme Court in *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872). The plaintiff in that case had filed a bill in equity seeking a determination of title to certain real property. The pleading alleged that the fourteen defendants had engaged in a fraud that had deprived plaintiff of the property. One of the defendants failed to plead, and a default judgment was therefore entered against him. The other defendants proceeded to trial and prevailed against plaintiff. On appeal, the Supreme Court reversed the default judgment, observing:

>> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and anoth-

>> er decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

> *Id.* at 554.

> Subsequent interpretations have treated this holding narrowly, agreeing that it prohibits entry of a default judgment "against one of several defendants (1) where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) where the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." In either case, it is appropriate to enter a default, though not a judgment, against the defaulting party, thereby barring his participation in further proceedings as to the merits. If the remaining defendants prevail, the defaulting defendant would then be exonerated, whereas if the plaintiff prevails on the merits, judgment would be entered against all defendants, including the defaulting party.

> In contrast, if the liability sought to be imposed is joint and several rather than joint, most courts have held that the rationale of *Frow* does not directly apply, since it would not be inconsistent to hold some but not all defendants liable. Nonetheless, even if liability is joint and several and thus a default judgment may be entered, the courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments. As Professor Moore observes, under such

circumstances "the district court when possible should consolidate the Rule 55(b)(2) hearing required for the assessment of the defaulting party's liability with the damage aspect of the non-defaulting party."

*Accord Gesualdi v. MMK Trucking, Inc.,* CV 09–1484(SLT)(AKT), 2010 WL 3619569 at *4–*5 (E.D.N.Y. Aug. 24, 2010) (Report and Recommendation), *adopted at,* 2010 WL 3619719 (E.D.N.Y. Sept. 9, 2010); *Montcalm Publ'g Corp. v. Ryan,* 807 F.Supp. 975, 978 (S.D.N.Y.1992) (Motley, D.J.).

■ Here, because I recommend that summary judgment be denied as to plaintiff's breach of contract claim against Yosupov (*i.e.,* the non-defaulting defendant), a default judgment should not be entered against Raman Int'l (*i.e.,* the defaulting defendant) on the same claim. If such a judgment were entered and Yosupov then prevailed at trial on the merits, this may result in inconsistent judgments as noted above.

Accordingly, based on the foregoing, plaintiff's motion as to its breach of contract claim should be granted only to the extent of noting Raman Int'l's default and deeming its liability established.

### D. *Damages*

As already noted, in the ad damnum clause of the Complaint, plaintiff seeks judgment: (1) "Ordering Defendants to immediately return the Diamond to [plaintiff];" (2) "Awarding [plaintiff] its actual compensatory damages in an amount to be determined at trial;" (3) "Awarding [plaintiff] punitive damages in the amount of $500,000.00" and (4) "Awarding [plaintiff] its legal fees and costs [incurred in connection with] this action" (Compl. at 5). However, in plaintiff's motions for default judg-

ment and summary judgment, plaintiff seeks to recover only (1) the value of the Diamond and (2) prejudgment interest on that amount at a rate of nine percent beginning on July 29, 2009, *i.e.,* the date upon which the Diamond was shipped to the Defendants (*see* Decl. for Default J. ¶ 10; Rule 56.1 Statement ¶ 16; Musighi Decl. ¶ 11). Accordingly, with respect to (1) the entry of a default judgment against Raman Int'l for conversion of the Diamond and (2) summary judgment against Yosupov for the same, I address the relief sought in plaintiff's motions.

■ A plaintiff who prevails on a claim for conversion "may recover the value of the property at the time and place of conversion, plus interest." *See Edidin v. Uptown Gallery, Inc.,* 09 Civ. 7829(DLC)(GWG), 2010 WL 2194817 at *1 (S.D.N.Y. June 1, 2010) (Cote, D.J.), *citing Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 657, 659, 662 (2d Cir.1994) *and Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 326, 402 N.E.2d 122, 125, 425 N.Y.S.2d 783, 786 (1980). Specifically, "[p]rejudgment interest on damages awarded because of conversion is recoverable under N.Y. CPLR § 5001(a)."[9] *Singapore Recycle Centre Pte Ltd. v. Kad Int'l Mktg., Inc.,* 06–CV–4997 (RRM)(RER), 2009 WL 2424333 at *20 (E.D.N.Y. Aug. 6, 2009) (Report and Recommendation), *adopted at,* 2009 WL 2778003 (E.D.N.Y. Sept. 1, 2009); *see also A I Marine Adjusters, Inc. v. M/V Siri Bhum,* 05 Civ. 7227(LBS) (THK), 2007 WL 760415 at *5 (S.D.N.Y. Feb. 8, 2007) (Katz, M.J.) (Report and Recommendation); *Am. Casualty Co. of Reading, Pennsylvania v. Morgan–White Underwriters, Inc.,* 02 Civ. 931(WHP) (DF), 2003 WL 23374768 at *7 (S.D.N.Y. Sept. 30, 2003) (Freeman, M.J.) (Report and Recommendation). The stat-

**9.** Specifically, Section 5001(a) provides: "Interest shall be recovered upon a sum awarded because of ... an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property ...." N.Y. C.P.L.R. § 5001(a).

utory interest rate is specified as nine percent per annum [10] and "shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. C.P.L.R. §§ 5001(b), 5004.

### 1. *Conversion Against Raman Int'l*

■ As an initial matter, with respect to plaintiff's conversion claim against Raman Int'l, plaintiff is not entitled to recover prejudgment interest. Plaintiff neither requested prejudgment interest in the body of the Complaint nor in the ad damnum clause.[11] This is fatal to plaintiff's application because Rule 54(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c). Rule 54(c) is based on the principle that:

> "[T]he defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing and otherwise defaulting, allow the court to give a different type of relief or a larger damage award."

*Silge v. Merz*, 510 F.3d 157, 159 (2d Cir. 2007), *quoting* 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice & Procedure* § 2663 (3d ed.1998) (footnote omitted). Thus, based on the foregoing, plaintiff's application for prejudgment interest against Raman Int'l should be denied. *See Silge v. Merz, supra*, 510 F.3d at 158 ("This case calls upon us to decide whether the appellant, after securing a default judgment, should have been permitted to recover on a claim for prejudgment interest that was not pleaded in the complaint or reflected in its demand clause .... we hold that the district court correctly applied Rule 54(c) ... in not allowing such recovery ...."); *see also Guanghong Int'l (HK) Ltd. v. Ultimate Fin. Solutions LLC*, 11 Civ. 4019(RMB)(KNF), 2012 WL 1228085 at *6 (S.D.N.Y. Mar. 26, 2012) (Fox, M.J.) (Report and Recommendation), *adopted at*, 2012 WL 2402902 (S.D.N.Y. June 26, 2012) (Berman, D.J.); *Leisure Direct, Inc. v. Glendale Capital, LLC*, 05–CV–4473 (KAM)(JO), 2010 WL 3782049 at *5 (E.D.N.Y. July 27, 2010) (Report and Recommendation), *adopted at*, 2010 WL 3782042 (E.D.N.Y. Sept. 20, 2010); *RLI Ins. Co. v. King Sha Grp.*, 598 F.Supp.2d 438, 446 (S.D.N.Y.2009) (Kaplan, D.J.).

In addition, plaintiff did not specify the exact dollar amount that it was seeking for the Diamond's conversion in the ad damnum clause. Instead, plaintiff requested only "its actual compensatory damages in an amount to be determined at trial" (Compl. at 5). In the body of the Complaint, plaintiff alleges the following with respect to the value of the Diamond and its damages: [12] (1) the Memorandum provided

---

**10.** "The compounding of interest is not allowed under CPLR 5001(a). The interest is simple." N.Y. C.P.L.R. C5001–4. In any event, plaintiff does not contend that anything other than simple interest applies to its damages.

**11.** The only reference to "interest" in the Complaint is as follows: "This Court has sub-

ject matter jurisdiction over this action ... because the plaintiff and defendants are citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs" (Comp.¶ 5).

**12.** These factual allegations are incorporated by reference into the count of the Complaint

that the Diamond's value was $525,-320.00 [13] and (2) as a result of the Defendants' breach of the Memorandum, which provided that the Diamond would be returned to plaintiff upon demand, plaintiff "incur[red] a monetary loss of not less than $500,000" (Compl. ¶¶ 9, 16).

 Notwithstanding the lack of specificity in the Complaint as to the exact amount of damages sought for the Diamond's conversion, I find that it is appropriate to enter a default judgment in the amount of $500,000.00 against Raman Int'l. As the Second Circuit has explained:

> While notice is one of the policy objections underlying Rule 54(c), notice alone [*i.e.*, at the inquest stage] is insufficient to satisfy the rule. The timing and method of such notice (*i.e.*, that it come *before* the decision to default and be evident from the face of the complaint) are both critical to the analysis.

*Silge v. Merz, supra*, 510 F.3d at 161 (emphasis in original). Here, as to the $500,000.00 figure, the purposes of Rule 54(c) are satisfied. First, the Complaint is a short document, spanning only four and a half pages. *Cf. Silge v. Merz, supra*, 510 F.3d at 160 ("Because complaints can be long and intricate, a lawyer is often re-

quired to help a defendant gain a full understanding of the plaintiff's claims. By limiting damages to what is specified in the 'demand for judgment,' the rule ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount and then default without the need to hire a lawyer."). Second, it is clear from the face of the Complaint that plaintiff (1) alleged a monetary loss of not less than $500,000.00 and (2) was seeking actual compensatory damages in connection with its claims against the Defendants.[14]

Accordingly, on the basis of the foregoing, I conclude that a default judgment in the amount of $500,000.00 should be entered against Raman Int'l for conversion of the Diamond.

### 2. *Conversion Against Yosupov*

 Because I recommend that summary judgment be granted in favor of plaintiff as to its conversion claim against Yosupov, plaintiff is entitled to recover (1) the value of the Diamond at the time and place of its conversion and (2) interest on that amount.[15] *See Edidin v. Uptown Gallery, Inc., supra*, 2010 WL 2194817 at *1.

---

setting forth plaintiff's conversion claim (*see* Compl. ¶ 17).

**13.** I note that plaintiff does not expressly allege the Diamond's value on the date of the conversion, *i.e.*, the date upon which the Defendants refused to return the Diamond after plaintiff's initial demand. *See Thyroff v. Nationwide Mut. Ins. Co., supra*, 360 Fed.Appx. at 180 (explaining that where the original possession of personal property is lawful, conversion does not occur until the defendant (1) refuses to return the property after demand or (2) sooner disposes of the property). However, because there is no reason to believe that the value of the Diamond decreased after it was shipped to the Defendants on July 29, 2009, I shall assume that its value on the date of conversion remained unchanged.

**14.** Although I accept plaintiff's valuation of the Diamond on the date of conversion as $525,320.00 for purposes of the default judgment against Raman Int'l, it would undercut the purposes of Rule 54(c) to award this amount to plaintiff. In the Complaint, plaintiff expressly alleged that it incurred a monetary loss of not less than $500,000.00. If plaintiff was seeking more than this amount, it could have, and should have, specified this.

**15.** *See* Fed.R.Civ.P. 54(c) ("Every other final judgment [*i.e.*, other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

Although plaintiff has not alleged the value of the Diamond on the date of the conversion, as already noted in footnote 13, there is no reason to believe that the Diamond's value decreased after it was shipped to the Defendants on July 29, 2009. Thus, I accept plaintiff's contention that, on the date of conversion, the Diamond's value remained unchanged. However, as explained in footnote 2, it appears that the correct valuation of the Diamond is not $525,320.00 as set forth in the Complaint, but instead is $526,320.00.

Plaintiff is also entitled to recover prejudgment interest from the date of the Diamond's conversion. *See* N.Y. C.P.L.R. §§ 5001(a)-(b), 5004. The yearly interest on an award of $526,320.00 at a rate of 9% per annum is $47,368.80 and the daily interest is $129.78. However, because plaintiff does not specify the date on which the conversion occurred, I recommend that prejudgment interest be entered beginning on the date that plaintiff commenced this action,[16] *i.e.,* December 10, 2010 (Docket Item 1). As 589 days have elapsed since this date, plaintiff is entitled to $76,440.42 in post-award, pre-judgment interest.

Accordingly, on the basis of the foregoing, plaintiff is entitled to recover from Yosupov a total of $602,760.42. This figure is comprised of: (1) $526,320.00, which represents the value of the Diamond and (2) $76,440.42, which represents pre-judgment interest at a rate of nine percent on a simple basis beginning on December 10, 2010.

### IV. *Conclusion*

For all the foregoing reasons, I respectfully recommend that (1) plaintiff's motion for a default judgment against Raman Int'l be granted in part and denied in part and (2) plaintiff's motion for summary judgment against Yosupov be granted in part and denied in part. Specifically, I recommend that a default judgment in the amount of $500,000.00 be entered against Raman Int'l only as to plaintiff's conversion claim and a default entered only as to plaintiff's breach of contract claim. I further recommend that summary judgment be granted against Yosupov only as to plaintiff's conversion claim and that judgment be entered against him in the amount of $602,760.42. If adopted, this Report and Recommendation will close Docket Items 12, 13 and 15 in 10 Civ. 9250.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street, Room 2510, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United*

---

**16.** It is not possible to ascertain the date of the conversion from plaintiff's motion papers nor from the record in this action. Plaintiff alleges only that it has made multiple demands for the return of the Diamond; however, there is no indication of when the initial demand took place other than sometime after July 29, 2009 (*i.e.,* the date on which the Diamond was shipped to the Defendants) and before December 10, 2010 (*i.e.,* the date on which plaintiff commenced this action).

States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir.1983).

