■ INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant, v RICHARD G. LEVINE et al., Respondents.—Order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered on or about May 23, 1989, denying a motion by plaintiff-appellant for summary judgment and denying a cross motion by defendants-respondents for partial summary judg-

ment, unanimously modified, on the law, plaintiff-appellant's motion for summary judgment granted as to the first cause of action, granted as to liability only on the second cause of action, and the matter remanded for further proceedings as to the second cause of action, and otherwise affirmed, with costs.

This is an action by a surety, appellant Indemnity Insurance Company of North America (Indemnity), for reimbursement from individual indemnitors, respondents Richard G. Levine (Levine) and Frank H. Seyer (Seyer), under an agreement of indemnity, for moneys paid by the surety pursuant to a bond. Levine and Seyer are the chief executive officer and president, and chairman and vice-president, respectively, of Rexplore, Inc. (Rexplore), a corporation engaged in the business of syndicating oil and gas limited partnerships.

On April 10, 1985 Levine and Seyer executed an agreement of indemnity by which Rexplore, and they individually, would secure any bonds issued by Indemnity on behalf of Rexplore. By the terms of the agreement of indemnity, the corporate and individual indemnitors each agreed to "exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses * * * (including but not limited to interest, court costs and counsel fees) * * * (1) By reason of having executed or procured the execution of the Bonds." On April 30, 1985 Seyer executed a promissory note for repayment of a $1,800,000 loan from Barclays American/Business Credit, Inc. (Barclays) to Rexplore in five installments of $360,000, due October 1, 1985 and January 1, April 1, July 1, and October 1, 1986. The note provided for payment of default interest in the amount of 2% above the loan's interest rate. Simultaneously, Indemnity issued a financial guarantee bond in the amount of $2,000,000, with Barclays as the obligee and Rexplore as principal. Seyer signed the bond as chairman and vice-president of Rexplore.

After Barclays notified Indemnity of Rexplore's default on the first installment, Indemnity, on November 21, 1985, paid Barclays $367,266.50, representing the first installment plus interest. Thereafter, Indemnity paid Barclays $360,000 on December 1, 1985 for the January 1, 1986 installment and, on March 31, 1986, prepaid the balance due on the note, $1,125,816.52. In March of 1988 plaintiff commenced this action for $1,852,084.02, and for attorneys' fees and expenses.

Levine and Seyer refused to respond to Indemnity's interrogatories, notice to admit and deposition questions on Fifth Amendment (US Const) grounds and Indemnity moved for

summary judgment on both causes of action. Respondents cross-moved for partial summary judgment denying plaintiff's claim for $1,485,816.52 in reimbursements, representing the second and final payments to Barclays.

Appellant's unrebutted submissions in support of the motion were sufficient to establish its cause of action for moneys paid to Barclays, and its entitlement to attorneys' fees and expenses. The assertions of respondents' counsel in opposition to the motion and in support of respondents' cross motion created no material factual issues, nor did they demonstrate an acceptable excuse for respondents' failure to do so. *(Capelin Assocs. v Globe Mfg. Corp.,* 34 NY2d 338, 342-343 [1947]; *Zuckerman v City of New York,* 49 NY2d 557, 562-563 [1980].)

Indemnity submitted copies of the agreement of indemnity, financial guarantee bond and related agreements, written correspondence between the parties and the affidavit of Robert V. Miller who, as Indemnity's supervisor of claims management, communicated with respondents regarding payments under the bond. Indemnity also submitted portions of a petition in bankruptcy filed by Rexplore in or about June 1986 in which it listed Indemnity as a creditor in the amount of $1,850,000. The schedule does not list the debt to Indemnity as one which is disputed.

We reject respondents' contention that the agreement of indemnity and promissory note were invalid because appellant was unable to identify the person who signed the agreements on behalf of Indemnity. Plaintiff Indemnity was not a party to the promissory note. Moreover, the signatures referred to on these documents are merely those of a witness to the signatures of Seyer and Levine. Respondents do not allege that the agreements were fraudulent or executed under duress or mistake and, therefore, are bound by their terms. *(Matter of Barone [M & K Realty Co.],* 143 AD2d 1008 [2d Dept 1988].) Moreover, the signatures of both Levine and Seyer were notarized and, thus, prima facie evidence of proper execution. (CPLR 4538; *Albany County Sav. Bank v McCarty,* 149 NY 71 [1896].) We similarly reject the contention that the agreement of indemnity is flawed for failure to identify the surety in the body of the document. Appellant's name appears both at the top of the document and at the bottom of the signature lines. Further, correspondence from respondents on behalf of Rexplore reveals that respondents were aware of the surety's identity.

Contrary to respondents' allegations of lack of consideration, the documents reflect that the writing of a bond was

consideration for the agreement of indemnity. *(Columbus Trust Co. v Campolo,* 110 AD2d 616, 617-618 [2d Dept 1985], *affd* 66 NY2d 701 [1985].) While the agreement of indemnity did not specifically identify the bond in issue, the agreement reflected the understanding of the parties that one or more bonds might be written and that those bonds would be written upon the express understanding that the agreement of indemnity had been executed. *(See, Travelers Indem. Co. v Buffalo Motor & Generator Corp.,* 58 AD2d 978 [4th Dept 1977] [upholding a general agreement of indemnity which contemplated a continuing series of transactions].)

We conclude that appellant's payments to Barclays were properly made. Paragraph 2 of the bond provides that upon the principal's default, the lender is to submit a statement and demand for payment to the surety setting forth the amounts of the payment and interest due. It is uncontradicted that the initial installment was made subsequent to Rexplore's default and in compliance with the bond's terms. Moreover, Indemnity's submissions reveal that the parties subsequently modified the bond's terms to permit tender of the remaining payments prior to default in order to avoid default interest costs. *(Rose v Spa Realty Assocs.,* 42 NY2d 338 [1977].) In *Rose* the Court of Appeals recognized that although a written contract proscribes oral modification, when there has been partial performance of an oral agreement to modify the contract, which performance is unequivocally referable to the oral agreement, then the modification is entitled to effect. Moreover, the court held that when, as here, a party's conduct induces another to substantially rely on the oral agreement to modify, that party may be estopped from disputing the modification.

Miller alleged in his affidavit that Levine made several representations to him regarding Rexplore's inability to pay the second installment due on January 1, 1986. In fact, in his letter of December 23, 1985 Levine set forth the bond number and requested appellant's assistance in making the next payment. It was therefore reasonable for plaintiff to comply with the request and to make the payment on or before the due date so as to avoid interest upon default. Levine's representation as president and chief executive officer of Rexplore and Indemnity's reliance thereon established mutual modification of the terms of their written agreement. Moreover, the provisions requiring written notice of default were for the benefit of the surety and could be waived by it. *(Alside Aluminum Supply Co. v Berliner,* 32 AD2d 731 [4th Dept 1969].)

With respect to appellant's third payment to Barclays,

Miller alleged that he met with respondents in February 1986, at which time he was advised by them that it was doubtful that Rexplore could meet any of the remaining installments due. Miller further alleged that he was advised by Indemnity's counsel that Levine requested that the surety pay off the promissory note and avoid default interest. While this hearsay evidence as to Levine's alleged statements to Indemnity's counsel could not alone support summary judgment in Indemnity's favor as to the final payment (cf., Zuckerman v City of New York, 49 NY2d, supra, at 562-563; La Capria v Bonazza, 153 AD2d 551 [2d Dept 1989]), there is additional evidence corroborating Indemnity's claim that there was mutual agreement as to this third payment. Plaintiff submitted evidence that both Levine and Seyer were notified each time plaintiff made a payment to Barclays, but that defendants never challenged such payments. Moreover, Rexplore's petition in bankruptcy, filed in June 1986, acknowledges an uncontested debt to Indemnity in the amount of $1,850,000, as apparently does Rexplore's internal correspondence dated May 7, 1986. (See, Rusch Factors v Sheffler, 58 AD2d 557 [1st Dept 1977].) Thus, a second oral modification of the parties' agreement was established.

Finally, we reject defendants' contention that no negative inference may be drawn from the invocation of their Fifth Amendment right. (See, Baxter v Palmigiano, 425 US 308 [1976]; Marine Midland Bank v Russo Produce Co., 50 NY2d 31 [1980]; United States v White, 589 F2d 1283, 1286 [5th Cir 1979].) Concur—Murphy, P. J., Sullivan, Milonas and Smith, JJ.