[626 NYS2d 472]

REPUBLIC OF HAITI, Appellant, v MICHELE B. DUVALIER, Respondent.

First Department, May 9, 1995

### APPEARANCES OF COUNSEL

*Michael Krinsky* of counsel *(Ira J. Kurzban, Laurie Edelstein* and *Jules Lobel* on the brief; *Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P. C.,* and *Kurzban, Kurzban & Weinger, P. A.,* attorneys), for appellant.

*Richard K. Bernstein* of counsel *(Richard K. Bernstein Associates, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

WILLIAMS, J.

This action by plaintiff Haiti seeks to recover monies allegedly embezzled by defendant and her husband, Jean-Claude

"Baby Doc" Duvalier, during the last six years, 1980-1986, of his reign as dictator of Haiti. Although it is alleged that as much as $120 million was taken, this action seeks recovery of more than $5.5 million which was deposited in defendant's accounts at Irving Trust (now Bank of New York) here in New York City. Alternatively, Haiti seeks to recover approximately $300,000 remaining in that account.

A brief recounting of the history of this litigation is in order. This action was commenced on or about August 5, 1986, approximately six months after the Duvaliers were swept from power. Plaintiff alleged that defendant, as an accomplice of her husband, embezzled millions of dollars from Haiti and secreted it in foreign countries, including the United States. The relief sought was declaration of a constructive trust for the benefit of Haiti of funds then held in defendant's name in accounts at the Irving Trust Company in New York City; an order directing return of such funds to Haiti; and a preliminary injunction against transfer of any funds in the accounts pending determination of the action. Defendant moved to dismiss on the alleged grounds of lack of personal and subject matter jurisdiction, forum non conveniens, and failure to state a cause of action.

The decision and order of Supreme Court, New York County (Louis Grossman, J.), entered on or about May 15, 1987, denied defendant's motion to dismiss, finding that jurisdiction existed in personam and in rem; that the "act of state doctrine" did not bar this action; granted the motion for a preliminary injunction; and directed plaintiff to serve an amended complaint "setting forth with particularity the theories on which it seeks recovery, whether it be conversion or a specified violation of Haitian civil law".

Plaintiff's amended verified complaint set forth three causes of action: embezzlement and conversion of government funds in violation of Haitian penal and civil law, as well as under New York law, and seeking declaration of a constructive trust for the benefit of Haiti relative to the funds in the bank accounts at issue; embezzlement in violation of Haitian penal and civil law, and seeking recovery of the funds unlawfully taken from the public treasury by defendant and the proceeds of such funds, including the funds in the bank accounts; and conversion under New York law, also seeking recovery of funds as in the second count. Defendant sought dismissal on the same grounds alleged against the original complaint, and

the motion was denied by Justice Grossman. Defendant appealed both of Justice Grossman's orders denying dismissal and this Court affirmed both orders without opinion on October 6, 1988 (*Republic of Haiti v Irving Trust Co.*, 143 AD2d 1076, *lv dismissed* 73 NY2d 871).

Subsequently this case was assigned to Justice Friedman, whose order is the subject of this appeal. Justice Friedman, ruling on plaintiff's motion and defendant's cross motion for summary judgment, granted the cross motion and dismissed the complaint, finding that plaintiff's voluminous documentary evidence was insufficient to plead or prove a claim of conversion under Haitian law, and that the act of state doctrine precluded adjudication of this matter in a New York court.

The issues remaining on this appeal then are whether plaintiff Haiti's conversion claim may be adjudicated in the courts of this State, and if so, whether Haiti has established its claim prima facie such that summary judgment is warranted. It is the opinion of this Court that these questions be answered in the affirmative.

■ The defense assertion, upheld by the IAS Court, that the act of state doctrine prevents adjudication of this action in New York courts is erroneous. The act of state doctrine prevents the judiciary from intruding into the domain of the President and Congress in their management of foreign policy and relations (*see, Banco Nacional v Sabbatino*, 376 US 398, 423; *Republic of Philippines v Marcos*, 806 F2d 344, 357-359 [2d Cir 1986], *cert denied sub nom. New York Land Co. v Republic of Philippines*, 481 US 1048). Under the circumstances here, the act of state doctrine is not applicable for several reasons. First, inasmuch as the foreign sovereign itself is seeking adjudication in our courts and the regime which committed the act of state in question is no longer in existence, there is little justification for applying the doctrine (*Kirkpatrick Co. v Environmental Tectonics Corp.*, 493 US 400, 409, citing *Banco Nacional v Sabbatino, supra*, at 428), since there is little danger of interfering with the conduct of foreign policy or of the adjudication giving offense to the foreign sovereign plaintiff.

Second, in this instance, the United States took an official stance in support of the Republic of Haiti's position in this lawsuit. In a statement of interest filed in this action, the United States asserted that it has "a substantial foreign policy interest * * * in assisting the Haitian government in recover-

ing its assets" (citing Pub L 99-529 [Special Foreign Assistance Act of 1986]). During most of the pendency of this litigation, it was impossible to bring this action in Haiti due to the ascendancy of various illegitimate military regimes; and specifically, during the pendency of this appeal, the democratically elected legitimate government was in exile, swept out of power by yet another military regime, and only recently returned to power.

Aside from the reasons stated above, there is also authority for not applying the act of state doctrine in the circumstances at bar. In *Republic of Philippines v Marcos* (862 F2d 1355, 1360 [9th Cir 1988]), the Ninth Circuit stated: "the classification of 'act of state' is not a promise to the ruler of any foreign country that his conduct, if challenged by his own country after his fall, may not become the subject of scrutiny in our courts." The purpose of the act of state doctrine is "to facilitate the foreign relations of the United States, not to furnish the equivalent of sovereign immunity to a deposed leader * * * Our courts have had no difficulty in distinguishing the legal acts of a deposed ruler from his acts for personal profit that lack a basis in law" *(supra,* at 1361; *see also, Republic of Philippines v Marcos,* 806 F2d 344, *supra; Jimenez v Aristeguieta,* 311 F2d 547, 557-558 [5th Cir 1962]; *New York Land Co. v Republic of Philippines,* 634 F Supp 279, 289 [SD NY 1986], *affd sub nom. Republic of Philippines v Marcos,* 806 F2d 344, *supra).*

█ Nor are the other reasons advanced for disallowing adjudication in the courts of this State persuasive. Contrary to the holding of the IAS Court, the claim herein does constitute a cause of action under Haitian civil law, meeting the requirement of *Cuba R. R. Co. v Crosby* (222 US 473, 478-479). Not only is this position supported by the rebuttable presumption, unrebutted here, enunciated by Justice Holmes in *Crosby,* i.e., that a fundamental wrong is prohibited by the law of a foreign State if it would be prohibited by all civilized nations *(Arams v Arams,* 182 Misc 328, 335; *Silberfeld v Swiss Bank Corp.,* 183 Misc 234, 236, *affd* 268 App Div 984), but also by affidavits submitted by plaintiff, including that of the Chief Justice of the Supreme Court of the Republic of Haiti, which set forth, *inter alia,* the legal limitations on a Haitian President's access to government funds and the various theories of recovery available against defendant and her husband for misappropriation of such funds under articles 1162 and 1168

of the Haitian Civil Code.* Furthermore, plaintiff successfully demonstrated that New York law provides a remedy for the claim herein *(see, Islamic Republic of Iran v Pahlavi,* 94 AD2d 374, 379, *affd* 62 NY2d 474 [the Court declined to adjudicate on forum non conveniens grounds, because plaintiff sought recovery of property located throughout the world, but stated that New York courts could determine disputed claims to the ownership of specific property having a situs in New York]; *Republic of Philippines v Marcos,* 806 F2d 344, 356, *supra* [claim was sufficiently stated for relief under New York law]). Finally, the IAS Court erred in reading Haitian Constitution title IV (art 147) as disallowing this action. As interpreted by the Chief Justice of the Supreme Court of the Republic of Haiti, this provision requires that an action in the nature of impeachment against a *sitting* head of state be brought before the Haitian Senate. The provision is irrelevant in an action against the defendant, or one against her deposed husband.

■ Having established that adjudication in this State is not barred, as urged by the IAS Court and the defendant, plaintiff Haiti sufficiently established its claim such that summary judgment is warranted. The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner *(Payne v White,* 101 AD2d 975, 976; *Peters Griffin Woodward .v WCSC, Inc.,* 88 AD2d 883). Where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner *(Manufacturers Hanover Trust Co. v Chemical Bank,* 160 AD2d 113, 124-125). The funds of a specific, named bank account are sufficiently identifiable *(Payne v White, supra).*

In seeking summary judgment, the Republic of Haiti demonstrated that public monies from its national defense account

---

* Article 1162:

"A person who, knowingly or not, accepts what is not owed to him, shall be obligated to repay the person from whom such payment was improperly received."

Article 1168:

"Any action perpetrated by any individual which causes damage to others carries an obligation for whoever is responsible for such action. to provide remedy to the damage."

This article is cited in the first and second causes of action in the verified amended complaint.

were used to open the personal bank account at issue, that deposits to the bank account were traceable to Haitian government checks, that over $5 million in cash were deposited in the bank account by friends and relatives of Mrs. Duvalier, and that the deposits to the bank account far exceeded the Duvaliers' known sources of legitimate income. It was further adduced that most of the deposits to the bank account were in the form of vast sums of cash, and that several of these deposits coincided either with travel from Haiti to New York by members of defendant's coterie carrying comparable sums of cash, or defendant's conversion of an identical sum in Haiti.

Furthermore, evidence was provided by officials and former officials of the Haitian government, such as the Chief Justice of the Supreme Court of the Republic of Haiti, the Assistant General Director of the Department of Treasury, and the General Director of the Ministry of Finance and Economy, which showed that only monies allocated to the President of Haiti as salary ($24,000 per year) could be used for personal purposes, i.e., deposited in a personal bank account, and that other monies allocated to the Presidency for various expenses could only be used for government purposes, notwithstanding the fact that such monies were labeled as "various and unforeseen expenses" or expenses "without justification" or that expenditure was considered to be subject to the President's discretion. In addition, there was evidence as to some of the practices the President and the defendant used to illegally obtain government funds, such as having funds for presidential functions remitted to him personally or having government funds allocated to his or defendant's nonexistent "pet" charities.

This combination of direct and circumstantial evidence is sufficient to establish plaintiff's conversion claim, prima facie. In the context of this type of claim, where fraud or illegality is likely to be involved, transactions such as those outlined above "must be judged not with clinical detachment but with a common sense view to the realities of normal life" (Wilson v Attaway, 757 F2d 1227, 1235 [11th Cir 1985], reh denied 764 F2d 1411; see also, United States v 5,644,540.00 in U.S. Currency, 799 F2d 1357, 1363 [9th Cir 1986] [where drug trafficking was alleged, court considered aggregate of facts in light of " 'common experience considerations' " in finding that civil forfeiture was warranted]), and "[p]articularly in cases involving bank accounts, money or other fungible assets, the only proof demonstrating probable cause is likely to be circumstan-

tial, revealing unexplained wealth in conjunction with evidence of [illegality]" *(United States v All Right, Tit. & Interest in Real Prop. Known as 785 St. Nicholas Ave.,* 983 F2d 396, 405 [2d Cir 1993], *cert denied sub nom. Beckford v United States,* — US —, 113 S Ct 2349). For instance, movements of large sums of cash, otherwise unexplained and unaccounted for, are usually presumed to be proceeds of illegal transactions, especially where, as here, they are combined with evidence of an illegal course of conduct *(see, supra,* at 403; *United States v Munoz-Romo,* 947 F2d 170, 178 [5th Cir 1991], *vacated on other grounds* — US —, 113 S Ct 30) and defendant's limited legitimate income.

Another element here which tends to establish plaintiff's case for summary judgment flows from defendant's refusal, on Fifth Amendment grounds, to testify at discovery regarding, *inter alia,* the source of funds deposited in the accounts in question. "When a party in a civil action, capable of testifying on the issues, refuses to testify by the claim of this privilege, he must thereupon bear all of the legitimate inferences flowing from the adverse evidence against him, and this without regard to his reasons for silence." *(Eastern Airlines v Stuhl,* 65 Misc 2d 901, 904, *affd* 68 Misc 2d 629.) "[T]he Fifth Amendment does not forbid adverse inferences * * * 'where the privilege is claimed by a *party to a civil cause.*' " *(Baxter v Palmigiano,* 425 US 308, 318, quoting 8 Wigmore, Evidence § 2272, at 439 [McNaughton rev 1961] [emphasis in original].) Accordingly, it is proper to infer that defendant withheld evidence regarding the source of the funds deposited in the bank accounts not only because it would have incriminated her, but also would have been unfavorable to her in this action *(see, Indemnity Ins. Co. v Levine,* 168 AD2d 323, 327; *Matter of DeBonis v Corbisiero,* 155 AD2d 299, 300-301; *Matter of Carey v Foster,* 164 AD2d 930, *lv denied* 76 NY2d 705); along with the other evidence presented by plaintiff, there is sufficient basis for summary judgment here.

Based upon the foregoing, the burden shifts to defendant to produce evidence which establishes a triable issue of fact *(Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853; *Alvarez v Prospect Hosp.,* 68 NY2d 320, 324). However, the only evidence produced by defendant is the equivocal affidavit of the ex-Minister of Justice of Haiti, who asserts in effect that a Haitian official's use of discretionary funds, such as those at issue here, was only limited by the requirement that the funds be used "in the spirit of the law", which sounds remarkably

similar to plaintiff's evidence that such discretion was limited to use of the funds for government purposes. As such, defendant fails to controvert plaintiff's evidence and raise triable issues of fact.

Finally, although plaintiff has established a prima facie case as to defendant's liability for conversion of Haitian state funds, warranting summary judgment as to that issue, questions remain as to damages, e.g., the total amount of state funds ultimately possessed by defendant without authorization along with interest due, and we must remand to the IAS Court for assessment thereof pursuant to CPLR 3212 (c).

Accordingly, the order of the Supreme Court, New York County (Lewis R. Friedman, J.), entered on or about February 1, 1994, which denied plaintiff's CPLR 3212 motion for summary judgment and granted defendant's cross motion for summary judgment, dismissed the action, and dissolved the preliminary injunction entered in this case, reversed, on the law, with costs, plaintiff granted partial summary judgment as to liability and remanded for assessment of damages.

SULLIVAN, J. P., WALLACH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about February 1, 1994, which denied plaintiff's motion for summary judgment and granted defendant's cross motion for summary judgment, dismissed the action, and dissolved the preliminary injunction entered in this case, reversed, on the law, with costs, plaintiff granted partial summary judgment is to liability and remanded for assessment of damages.