Delia **POLANCO**, Plaintiff,

v.

**NCO PORTFOLIO MANAGEMENT, INC.**, Defendant.

No. 11 Civ. 07177(DAB)(DF).

United States District Court, S.D. New York.

Signed June 3, 2014.

Ahmad Keshavarz, Ahmad Keshavarz, Law Offices, Brooklyn, NY, for Plaintiff.

Aaron R. Easley, Sessions, Fishman, & Nathan & Israel LLC, Flemington, NJ, for Defendant.

## MEMORANDUM AND ORDER

DEBRA FREEMAN, United States Magistrate Judge.

In this case, involving alleged violations of the Fair Debt Collection Practices Act ("FDCPA") by defendant NCO Portfolio Management, Inc. ("Defendant"), plaintiff Delia Polanco ("Plaintiff") moves for leave to amend her Complaint to add claims of (a) conversion of Plaintiff's funds and (b) violation of New York Judiciary Law Section 487. (Dkt. 31.) For the reasons discussed below, Plaintiff's motion is granted as to the claim for conversion and denied as to the claim for violation of New York Judiciary Law.

## BACKGROUND [1]

Plaintiff is a New York resident whose debt was purchased by Defendant, a large Delaware corporation that purchases consumer and commercial debt portfolios for collection. (*See* Proposed First–Amended Original Complaint and Jury Demand, dated Sept. 20, 2013 ("Proposed Am. Compl.") (Dkt. 30–2), ¶¶ 3, 6–7.) Defendant attempts to collect on the accounts it purchases by sending collection letters and filing collection lawsuits. (*Id.* ¶ 6.) Mel S. Harris and Associates, LLC ("Harris") is a debt collection law firm that has represented Defendant in connection with collections lawsuits. (*See id.* ¶¶ 5, 8.)

### A. *Bronx Civil Court Proceedings*

In early January 2006, Harris, on behalf of Defendant, filed a state court collections lawsuit against Plaintiff in Bronx Civil Court. (Proposed Am. Compl. ¶ 8.) Harris allegedly failed to serve Plaintiff with notice of the lawsuit, but submitted a falsified affidavit of service to the court. (*Id.* ¶ 9.) On March 20, 2006, the court entered a default judgment against Plaintiff in the amount of $2,451.45. (*Id.*) A New York City marshal executed this judgment, and, shortly thereafter, Plaintiff's funds (minus

---

1. The facts set forth herein are taken from Plaintiff's proposed Amended Complaint and are assumed to be true for purposes of Plaintiff's motion to amend.

Harris's fee) were forwarded to Defendant. (*Id.* ¶ 10.)

On October 27, 2010, proceeding *pro se*, Plaintiff moved by order to show cause for the Bronx Civil Court to vacate the judgment against her. (*Id.* ¶ 11.) In an affidavit supporting the proposed order, Plaintiff swore to specific facts supporting her claim that the affidavit of service was false. (*Id.* ¶ 12.) The court granted Plaintiff's application for an order to show cause, and, on November 18, 2010, after a hearing, the court entered an order vacating the debt collection judgment and all liens, restraining orders, and executions based on that judgment. (*Id.* ¶¶ 15, 17.)

Plaintiff alleges that, starting in October 2010, Defendant's in-house counsel and legal department were involved in the Bronx Civil Court proceedings. (*Id.* ¶ 14.) Plaintiff alleges that Harris informed Defendant's in-house counsel of the order to show cause and the hearing to vacate the judgment (*id.* ¶ 15); that, despite having knowledge of other cases in which Harris had used false affidavits, Defendant failed to take action to determine if false affidavits were used in Plaintiff's case (*id.* ¶ 16); and that Defendant was notified on November 19, 2010 of the November 18, 2010 order vacating the default judgment (*id.* ¶ 18).

In early March 2011, Plaintiff moved by order to show cause to have her funds returned. (*Id.* ¶ 21.) After a hearing on March 17, 2011, the Bronx Civil Court ordered Defendant to return to Plaintiff "any funds previously or currently ... in the possession of [Defendant] ... forthwith" ("March 2011 Court Order"), (*Id.* ¶ 22.) The court also noted that Defendant's failure to comply would subject it to a finding of contempt of court. (*Id.*)

Plaintiff alleges that an attorney for Harris was present at the March 17, 2011 hearing (*id.* ¶ 23), and that, through Har-

ris, Plaintiff' sent a copy of the March 2011 Court Order to Defendant (*id.* ¶ 24). Plaintiff further alleges that Defendant received a copy of the order from Harris on April 7, 2011, three weeks after it was entered (*id.* ¶ 24), and that Defendant's in-house counsel had physical possession of the order no later than April 14, 2011 (*id.* ¶ 26).

Defendant returned Plaintiff's funds on August 26, 2011. (*Id.* ¶ 27.)

## B. *Procedural Background*

### 1. *Complaint and Motion for Judgment on the Pleadings*

Plaintiff commenced this action by filing a Complaint on October 12, 2011 against Defendant and Harris, claiming that they had violated the FDCPA by fraudulently obtaining a default judgment and failing to comply with a court order to return Plaintiff's funds. (*See generally* Complaint and Jury Demand, dated Oct. 12, 2011 ("Compl.") (Dkt. 1).) Plaintiff reached a settlement with Harris, whereby the parties stipulated on March 22, 2012 to dismiss Harris from the action pursuant to Federal Rule of Civil Procedure 41(a)(1), without prejudice to Plaintiff's claims against Defendant. (Dkt. 13.)

Defendant filed a motion for judgment on the pleadings on May 16, 2012, arguing that the FDCPA does not apply to a debt collector's refusal to comply with a court order. (Dkts. 16–17.) On June 20, 2012, Plaintiff filed an opposition to Defendant's motion (Dkt. 19), and, on July 3, 2012, Defendant filed a reply (Dkt. 20). The Court denied Defendant's motion for judgment on the pleadings on March 18, 2013, 930 F.Supp.2d 547 (S.D.N.Y.2013). (Dkt. 21.)

### 2. *Plaintiff's Motion for Leave To File an Amended Complaint*

On September 23, 2013, Plaintiff filed a motion to amend the Complaint (Dkt. 31), together with a supporting memorandum (Plaintiff's Memorandum of Law in Support of Filing an Amended Complaint, dated Sept. 23, 2013 ("Pl. Mem.") (Dkt. 32)).[2] Plaintiff's proposed Amended Complaint would add claims against Defendant for conversion of Plaintiff's funds and for violation of New York Judiciary Law Section 487. (*See generally* Proposed Am. Compl.) In addition, the proposed amendment would add additional detail to Plaintiff's damages claims for "personal humiliation, anger, embarrassment, shame, mental anguish, emotional distress, loss of privacy, frustration, anxiety, an inability to sleep, constant fear being of being unable to pay for her most essential needs, and other distress that disrupted her activities of daily living." (*Id.* ¶ 28; *see also id.* ¶¶ 29, 30.)

Defendant filed a memorandum of law in opposition to Plaintiff's motion to amend on October 2, 2013, arguing that the proposed amendment would be futile. (*See* Memorandum of Law in Support of Defendant's Opposition to Plaintiff's Motion To File an Amended Complaint, dated Oct. 2, 2013 ("Def. Mem.") (Dkt. 33) at 1.) Specifically, Defendant argues that (a) Plaintiff "cannot establish the elements of a conversion claim," and (b) Defendant is not subject to Section 487 of the Judiciary Law because it is not an attorney and therefore any claim against it under that Section would be subject to dismissal. (*See id.*) In connection with its opposition, Defendant also filed a declaration by Aaron Easley, Esq. ("Easley"), to which it appended a number of exhibits, (*See* Declaration of Aaron Easley, Esq., in Opposition to Plaintiff's Motion for Leave To File an Amended Complaint, dated Oct. 2, 2013 ("Easley Decl.") (Dkt. 33–1).) Those exhibits consist of documents from the Bronx Civil Court proceedings, deposition testimony, emails, notes, a letter written by Plaintiff, and a copy of a check. (*See generally* Easley Decl.)

Plaintiff filed a reply memorandum of law on October 9, 2013, arguing that her proposed amendment adequately pleads that Defendant converted her money when it knowingly failed to return the funds "forthwith" in contravention of a valid court order. (*See* Plaintiff's Reply in Support of Her Motion to File First Amended Complaint, dated Oct. 9, 2013 ("Pl. Reply") (Dkt. 37), at 2–6.) Plaintiff further argues that Defendant can be held to have violated Judiciary Law Section 487 because, according to Plaintiff, a company is directly and vicariously liable for the deceitful actions of its attorneys, including its in-house counsel, (*Id.* at 6–10.) With the exception of the documents related to the Bronx Civil Court proceedings, Plaintiff objects to the exhibits Defendant submitted to the Court with its attorney declaration and to Defendant's reliance on those documents in its opposition to the motion to amend. (*Id.* at 1–2.)

### DISCUSSION

### I. *APPLICABLE LEGAL STANDARDS*

■ Under Rule 15(a), the standard for amendments is a liberal one; as stated in the Rule, the Court "should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). Nonetheless, a mo-

---

**2.** Plaintiff's counsel had apparently attempted to meet this Court's September 20, 2013 deadline for the filing of such a motion (*see* Dkt. 30), but, due to a filing error, the motion and accompanying memorandum were not actually docketed until September 23 (*see* Dkts. 31–32).

tion to amend a pleading under Rule 15(a) should be denied "if there is an 'apparent or declared reason—such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel, Known as New York,* 162 F.3d 63, 69 (2d Cir.1998) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see also Richardson Greenshields Secs., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (citation omitted).

■ An amendment is considered futile when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 119 (2d Cir.2012). Thus, when a proposed amendment is challenged as "futile," the Rule 12(b)(6) standards become relevant. Under Rule 12(b)(6), a complaint is subject to dismissal when it is not legally sufficient to state a claim upon which relief can be granted. *See Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007); *accord Jaghory v. New York State Dep't of Ed.,* 131 F.3d 326, 329 (2d Cir.1997). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir.2006) (citation omitted). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir.2010) (quoting *Iqbal,* 556 U.S. at 666, 129 S.Ct. 1937).

■ "On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are 'integral' to the complaint." [3] *Calcutti v. SBU, Inc.,* 273 F.Supp.2d 488, 498 (S.D.N.Y.2003) (internal citations omitted); *accord Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). To incorporate a document by reference, "a complaint must make a clear, definite, and substantial reference to the document[ ]." *Allen v. Chanel, Inc.,* No. 12–6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013) (internal quotation marks and citation omitted); "'[l]imited quotation does not constitute incorpo-

---

3. If material outside of these limited categories is not excluded by the Court, then the Rule 12(b)(6) motion "shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." *See Chambers,* 282 F.3d at 152 (quoting Fed.R.Civ.P. 12(b)).

ration by reference,'" *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989) (quoting *Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985)). For a document to be considered "integral to a complaint," a plaintiff must have had "(1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *DeLuca v. AccessIT Group, Inc.,* 695 F.Supp.2d 54, 59–60 (S.D.N.Y.2010) (quoting *Chambers,* 282 F.3d at 153). Moreover, "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers,* 282 F.3d at 153 (emphasis in original). "Even if a document meets the twin requirements of integrality—reliance and notice—a court still may not consider it on a motion to dismiss if there is a dispute 'regarding the authenticity or accuracy of the document' or the 'relevance of the document.'" *DeLuca,* 695 F.Supp.2d at 60 (quoting *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006)).

## II. *CONVERSION*

### A. *Pleading Requirements for a Claim of Conversion*

■ "[C]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 403–04 (2d Cir.2006) (citation omitted). Conversion is predicated on "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs [sic] rights." *Pacific M. Intern. Corp. v. Raman Intern. Gems, Ltd.,* 888 F.Supp.2d 385, 396 (S.D.N.Y.2012) (citation omitted).

■ Under New York law,

[t]o state a claim for conversion, [a] plaintiff must allege that '(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused.'

*Sabilia v. Richmond,* No. 11–739(JPO)(MHD), 2011 WL 7091353, at *19 (S.D.N.Y. Oct. 26, 2011) (quoting *Seanto Exps. v. United Arab Agencies,* 137 F.Supp.2d 445, 451 (S.D.N.Y.2001), *adopted by* 2012 WL 213656 (S.D.N.Y., Jan. 24, 2012)). To state a conversion claim "[w]here the property is money, [the money] must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Cruz v. TD Bank, N.A.,* 855 F.Supp.2d 157, 174 (S.D.N.Y. 2012) (quoting *Republic of Haiti v. Duvalier,* 211 A.D.2d 379, 626 N.Y.S.2d 472, 475 (1st Dep't 1995)).

■ When the defendant's "original possession [of the property] is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Schwartz v. Capital Liquidators, Inc.,* 984 F.2d 53, 54 (2d Cir.1993) (quoting *Johnson v. Gumer,* 94 A.D.2d 955, 464 N.Y.S.2d 318, 319 (4th Dep't 1983)). While a lawful custodian of property cannot be charged with converting that property "until after a demand and refusal," *Regions Bank v. Wieder & Mastroianni, P.C.,* 526 F.Supp.2d 411, 414 (S.D.N.Y. 2007) (citation omitted), a "demand and refusal" will be considered futile, and thus not be required, in certain limited circumstances, including where the custodian "knows it has no right to the goods," *State v. Seventh Regiment Fund, Inc.,* 98 N.Y.2d 249, 260, 746 N.Y.S.2d 637, 774 N.E.2d 702

(2002). Furthermore, while a party is generally "privileged to commit acts which would otherwise be a ... conversion when [it] acts pursuant to a court order which is valid or fair on its face," *Calamia v. City of New York*, 879 F.2d 1025, 1031 (2d Cir.1989) (quoting RESTATEMENT (SECOND) OF TORTS § 266 (1965)), "the actor has no such privilege when he has procured the order by means of an intentional misrepresentation to the issuing authority," *id.*

 A party cannot avoid a conversion claim because it eventually returned the property in question. "Returning property to the rightful owner ... does not absolve defendants of all liability from the alleged conversion. A claim for conversion will exist even when the deprivation is partial or temporary." *Slue v. New York Univ. Med. Ctr.*, 409 F.Supp.2d 349, 364 (S.D.N.Y.2006) (citation omitted).

## B. *Adequacy of Plaintiff's Proposed Pleading of Conversion*

 Plaintiff proposes to plead that Defendant "interfered with [Plaintiff's] right to the money by refusing to return it for more than 5 months after being ordered that [Defendant] 'shall ... forthwith' return 'all funds' to [Plaintiff] or be subject to 'contempt.'" (Proposed Am. Compl. ¶ 40). Plaintiff alleges that Defendant's in-house counsel had "physical possession" of the March 2011 Court Order for four and a half months before returning Plaintiff's money. (*Id.* ¶ 41). Accepting Plaintiff's factual allegations as true, Plaintiff's proposed pleading for conversion "state[s] a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

### 1. *Allegation That Defendant Acted Without Authorization*

Defendant argues that, rather than acting without authorization as required for claim of conversion, Defendant had "authorization pursuant to a Judgment valid on its face." (Def. Mem. at 10.) Neither party disputes that Defendant initially obtained Plaintiff's money by means of a debt collection suit and a default judgment in the Bronx Civil Court. (*See* Proposed Am. Compl. ¶¶ 9–10; Def. Mem. at 2, ¶ 4.) The alleged unauthorized action, however, took place when Defendant failed to return the money for several months after receiving the Bronx Civil Court's order to do so "forthwith." Even though Defendant may have originally had authorization to hold the funds, Plaintiff's allegation that Defendant failed to return the funds for months after receiving an order to do so is a sufficient factual predicate for a claim for conversion. *See Okyere v. Palisades Collection, LLC*, 961 F.Supp.2d 522, 534 (S.D.N.Y.2013) (denying motion to dismiss a conversion claim and noting that "even if the initial taking of the money was authorized, the complaint alleges that the [defendants] deliberately refused for many months to comply with a written demand to return the money...."). Further, Plaintiff argues that Defendant obtained a default judgment in its collections suit "based on the systematic use of false affidavits by [Defendant's] law firm." (Pl. Reply at 4.) If this allegation is taken as true, then Defendant cannot use the Bronx Civil Court's order to immunize itself from liability. *See Calamia*, 879 F.2d at 1031.

### 2. *Allegation That Defendant Exercised Dominion Over Plaintiff's Funds*

The element of dominion is not at issue here, as Plaintiff proposes to plead that "over $1,600 of her money [was] in the possession of [Defendant]" until Defendant returned Plaintiff's money on August 26, 2011 (Proposed Am. Compl. ¶¶ 40, 41), and

Defendant has not challenged the adequacy of this allegation.

### 3. *Allegation That Plaintiff Demanded Return of Her Funds, or Was Excused From Making Such Demand*

Defendant argues that Plaintiff did not sufficiently allege the element of demand of the funds as required to state a claim for conversion. (Def. Mem. at 10.) Defendant's particular argument that Plaintiff failed to demand return of the funds in November 2010 is beside the point, as Plaintiff's allegations focus on Defendant's supposed failure to return the funds for several months after receiving the March 2011 Court Order. Furthermore, literal demand is not required in a situation where Defendant "knows it has no right to the goods," *see Seventh Regiment Fund, Inc.*, 98 N.Y.2d at 260, 746 N.Y.S.2d 637, 774 N.E.2d 702; Plaintiff's factual allegations that Defendant possessed an order from the Bronx Civil Court to return the funds "forthwith" are therefore sufficient to properly plead demand.

### 4. *Allegation That Defendant Refused To Return Funds*

Defendant argues that Plaintiff has not properly alleged a claim for conversion because Plaintiff's proposed pleading lacks the element of refusal. Defendant argues that it never refused to return Plaintiff's money and, instead, returned Plaintiff's money in full at the direction of its independent attorneys after waiting for their instructions on that issue. (Def. Mem. at 10–11.)

Defendant's argument again misses the mark. While Plaintiff concedes that the money was eventually returned (*see* Proposed Am. Compl. ¶¶ 27, 30), this does not render the proposed pleading of conversion futile where Plaintiff seeks to plead that Defendant knowingly held the money without authorization for months. Indeed, in an analogous case, this Court recently rejected the argument that a plaintiff had failed to state a claim for conversion "because the funds were returned to him six months after they were taken," noting that "[r]eturning property to the rightful owner does not absolve defendants of all liability from the alleged conversion" and that a "claim for conversion will exist even when the deprivation is partial or temporary." *See Okyere*, 961 F.Supp.2d at 534 (citations omitted).

Equally misguided is Defendant's attempt to rely on the deposition testimony of its corporate representative to demonstrate supposed flaws in Plaintiff's pleading of the element of "refusal." In this regard, Defendant points to its witness's explanation of the delay in the return of Plaintiff's money—*i.e.*, that Defendant was awaiting advice from its new counsel, and that it returned the funds when it was instructed by counsel to do so, (*See* Def., Mem., at 10–11 (citing Easley Decl., Ex. B (Transcript of deposition of Michael G. Noah, conducted August 6, 2013) (Dkt. 33–3) at 8, 13–14, 38, 39, 41, 42).) Even if the deposition transcript of Defendant's witness should be deemed integral to the proposed Amended Complaint, the witness's explanation of Defendant's conduct would not undermine the sufficiency of Plaintiff's proposed pleading. Plaintiff's proposed conversion claim rests on the allegation that Defendant had knowledge of the court's order requiring the return of Plaintiff's funds "forthwith," and it is at least plausible that Defendant's professed reason for its delay in complying with that order, even if taken as true, would not legally excuse its retention of the funds for a period of months.

Furthermore, Plaintiff argues persuasively that the Court should *not* deem the

full deposition transcript in question to be integral to the proposed Amended Complaint, and thus that the Court should not even consider it here.[4] Certainly, the transcript is not attached to the proposed Amended Complaint, and is not explicitly incorporated by reference. At most, Plaintiff's states, in her memorandum of law in support of her motion to amend, that certain of the allegations contained in the proposed amendment were learned in the course of that deposition:

> The additional claims are based on specific facts that only came to light in the August 5, 2013 deposition of the corporate representative of [Defendant]. It was only at that deposition that [Defendant] disclosed that its in-house counsel was directly involved each step of the way from the October 27, 2010 order to show cause on. It was only at that deposition that [Defendant] disclosed that its in-house counsel had in his possession no later than April 14, 2011 the March 17, 2011 order to return the money forthwith. And most importantly, it is only at the August 6, 2013 deposition that NCO disclosed that it believed it had done absolutely nothing wrong, that it believes returning [Plaintiff's money] five months after the March 17, 2011 order is in fact 'forthwith,' and that [Defendant] would take the exact same

steps today as it took then, even knowing all the facts they now know.

(*See* Pl. Mem. at 3.)

The fact that Plaintiff may have relied on information uncovered during a deposition to support a proposed amendment does not mean that all information to which the deponent testified must be deemed part of the proposed pleading. To the contrary, although there could conceivably be circumstances in which a transcript of testimony could be deemed "integral" to a pleading,[5] in "most instances" where courts have found that external material should be incorporated into a complaint, "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.2006).

Illustrating the point, the Second Circuit has gone on to state that

> [t]his principle has its greatest applicability in cases alleging fraud. When a complaint alleges, for example, that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule

---

**4.** Indeed, Plaintiff argues that, besides court documents from the Bronx Civil Court proceeding, none of the exhibits that Defendant has submitted with its opposition should be considered by the Court in connection with Plaintiff's motion to amend. (*See* Pl. Reply, at 2–3.) The Court need not reach those arguments, as, apart from one other exhibit (a copy of the check showing the eventual return of the funds, a fact Plaintiff does not contest), the deposition transcript is the only extrinsic evidence objected to by Plaintiff on which Defendant relies in support of its "futility" argument against the proposed claim of conversion. (*See generally* Def. Mem. (referenc-

ing and relying on other exhibits in summary of facts and argument in opposition of proposed Section 487 claim, but not in legal argument opposing conversion claim).)

**5.** *See, e.g., Allstate Ins. Co. v. Rozenberg*, 771 F.Supp.2d 254, 268 (E.D.N.Y.2011) (denying review of deposition transcript on a motion to dismiss where "[p]laintiff's d[id] not purport to have relied on defendant's deposition in crafting the allegations in the Amended Complaint" and instead asserted that they relied on other documents).

12(b)(6) motion, to examine the document to see whether or not those facts were disclosed. Or when the complaint alleges that such a document made a particular representation, the court may properly look at the document to see whether that representation was made. Consideration of such documents filed with the SEC is appropriate with respect to a nondisclosure or misrepresentation claim because no serious question as to their authenticity can exist, and because the court is to consider them on a Rule 12(b)(6) motion only to determine *what* the documents stated, and *not to prove the truth of their contents.*

*Roth v. Jennings,* 489 F.3d 499, 509–10 (2d Cir.2007) (emphasis in original; citations and quotations omitted). This reasoning highlights the problem inherent in Defendant's implied contention that Plaintiff's proposed pleading should be read to include all facts to which Defendant's witness testified in discovery. Essentially, Defendant is asking the Court to take portions of testimony that may well be disputed, and to use that testimony to attack the factual validity of Plaintiff's proposed claim. Such an exercise, at this stage of the proceedings, would be inappropriate. *See Addison v. Reitman Blacktop, Inc.,* 283 F.R.D. 74, 79–80 (E.D.N.Y. 2011) (finding that a document introduced by defendant as "an attack on the factual validity of the Plaintiffs' claims" it is not appropriate for consideration on a motion to dismiss or a motion to amend); *see Roth,* 489 F.3d at 509–10 (finding a ruling under Rule 12(b)(6) "is not an occasion for the court to make findings of fact"). The evaluating and weighing of testimony would be better handled by the Court at the summary judgment stage than in connection with a motion to amend, where futility of proposed claims is governed by a Rule 12(b)(6) standard. *See Global Network Commc'ns, Inc.,* 458 F.3d at 155 (noting that "the purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiffs statement of a claim for relief *without* resolving a contest regarding its substantive merits" and "[t]he streamlined testing of the substantive merits ... is more appropriately reserved for the summary judgment procedure ... where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule") (emphasis in original).

For all of these reasons, the Court finds that Plaintiff's proposed conversion claim is not facially defective, that it is not rendered defective by the deposition testimony of Defendant's corporate witness (which testimony should not, in any event, be considered at this stage), and that the proposed amendment to add this claim would therefore not be futile. Accordingly, Plaintiff's motion to amend her Complaint to add the conversion claim is granted.

## III. NEW YORK JUDICIARY LAW § 487

### A. Pleading Requirements for a Violation of Judiciary Law § 487

Plaintiff also proposes to plead that Defendant violated New York Judiciary Law Section 487, which governs "misconduct by attorneys" and states that:

[a]n attorney or counselor who: (1) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or, (2) Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for

commits a misdemeanor and is liable for treble damages to injured parties. N.Y. Jud. Law § 487 (McKinney 2014). While

many courts have found that civil claims pursuant to Section 487 are limited to those that show "a chronic and extreme pattern of legal delinquency" by the defendant that indicates an intent to deceive the court or any party,[6] the Second Circuit has noted that no such requirement exists in the statute and that other courts "have found attorneys liable under [subsection (1) of] the statute for a single intentionally deceitful or collusive act." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123–24 (2d Cir. 2008); *accord Trepel v. Dippold*, No. 04–8310(DLC), 2005 WL 1107010, at *4 (S.D.N.Y. May 9, 2005) (finding that "[a] single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability" under Section 487).

 Section 487(1), however, only allows for claims against attorneys who engage in acts of deceit or collusion that are directed at a court or that "occur during the course of a pending judicial proceeding." *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, No. 12–9459(PAE), 2013 WL 3357921, at *10 (S.D.N.Y. July 2, 2013), *aff'd*, 552 Fed. Appx. 79 (2d Cir.2014); *accord O'Brien v. Alexander*, 898 F.Supp. 162, 168–69 (S.D.N.Y.1995), *aff'd* 101 F.3d 1479 (2d Cir.1996) (holding that "[s]ince no lawsuit was pending when the alleged representations in question were made ... plaintiff's claim must be dismissed, for section 487 by its terms applies only to statements made to the court or any party to a lawsuit"); *Henry v. Brenner*, 271 A.D.2d 647, 706 N.Y.S.2d 465, 466 (2d Dep't 2000). The deceit or collusion "need not occur during a physical appearance in court," and may instead take place during "any oral or written statement related to a proceeding

and communicated to a court or party with the intent to deceive." *Amalfitano*, 533 F.3d at 123.

Section 487(2) is of a different character. Rather than focusing on attorney misconduct directed at a court, it appears to be focused on attorney misconduct directed at a *client*, specifically the misappropriation of client funds. Thus, for example, courts have found attorneys liable to their clients under this subsection where they failed to make payments on their clients' behalf, when the clients had advanced money for that purpose, *see, e.g., Wiggin v. Gordon*, 115 Misc.2d 1071, 1077, 455 N.Y.S.2d 205 (N.Y.City Civ.Ct.1982) (allowing claim by client who had given her counsel money to pay taxes and satisfy a lien on her behalf, and the attorney failed to do so for years despite promises that he would), or where counsel either placed their clients' funds into personal, instead of escrow, accounts, *see, e.g., Burton v. Kaplan*, 1991 WL 11763908 (N.Y.Sup.Ct.1991) (finding a violation of Section 487 where attorney placed client money "into personal bank account instead of client trust account for five years"), *aff'd* 184 A.D.2d 408, 585 N.Y.S.2d 359 (1st Dep't 1992), or otherwise failed to return or account for client funds, *see, e.g., In re Kovler*, 253 B.R. 592, 602–03 (Bankr. S.D.N.Y.2000) (finding violation where attorney "received and held [money] as an attorney and fiduciary for [his client] and refused to return or account for the money"), *corrected on other grounds*, 329 B.R. 17 (Bankr.S.D.N.Y.2005).

### B. *Adequacy of Plaintiff's Proposed Claim Under Section 487*

 Plaintiff proposes to plead that Defendant "violated [Section] 487 for the

---

**6.** *See, e.g., Kirk v. Heppt*, 532 F.Supp.2d 586, 593 (S.D.N.Y.2008) (citations omitted); *see also Senator Linie GmbH & Co. KG v. Eastern Sunway Line, Inc.*, No. 96–0008(MGC), 2004 WL 232143, at *2 n. 1 (S.D.N.Y. Feb. 6, 2004); *Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 692 N.Y.S.2d 361, 362 (1st Dep't 1999).

same reasons it violated the FDCPA and committed the tort of conversion." (Proposed Am. Compl. ¶ 44.) While this vague allegation could be read to mean that Plaintiff is seeking to hold Defendant responsible for Harris's alleged misconduct, it is clear that such a claim could not stand, as clients may not be held derivatively liable under the statute for the misconduct of their counsel. *See Yalkowsky v. Century Apartments Assocs.*, 215 A.D.2d 214, 626 N.Y.S.2d 181, 182 (1st Dep't 1995) (affirming dismissal of Section 487 claim as the statute "is only applicable to attorneys and cannot extend derivative liability to a client"); *Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc.3d 848, 987 N.Y.S.2d 794, 809, 2014 WL 1258222, at *12 (Sup.Ct.N.Y. County 2014) (citing *Yalkowsky* and dismissing Section 487 claim against attorneys' client because "[a]s a threshold matter. Section 487 is only applicable to attorneys and cannot extend derivative liability to a client" (internal citation and quotation marks omitted)); *State Farm Mut. Ins. Co. v. Anikeyeva*, 35 Misc.3d 1203(A), 950 N.Y.S.2d 726, at *3 (Sup.Ct. Nassau County 2012) (citing *Yalkowsky* and dismissing a Section 487 counterclaim against State Farm's general counsel for allegedly ratifying and encouraging the submission of fraudulent affidavits in litigation involving defendants because "[t]his statutory cause of action is only applicable to attorneys and cannot extend derivative liability to a client").

Indeed, Plaintiff primarily seems to argue that a Section 487 claim against Defendant would be viable because Defendant employed an in-house attorney, who, according to Plaintiff, "was involved each step of the way in the state court collection lawsuit," and "had physical possession" of

the order to return Plaintiff's money forthwith for more than four and a half months before returning it to Plaintiff. (*Id.* ¶ 44.) Thus, when Plaintiff proposes to plead that Defendant "integrally participated in, consented to, and colluded with the acts that form the basis of the Judiciary Law claim" (*id.*), Plaintiff is presumably referencing the alleged misconduct of Defendant's in-house counsel, and suggesting that Defendant may be liable for that claimed misconduct under the doctrine of *respondeat superior*.

The law is somewhat uncertain as to whether such a vicarious-liability claim is possible under Section 487(1).[7] On the one hand, one court in this district has suggested that such a claim may be viable. In *Rudow v. City of New York*, the court reviewed on summary judgment a Section 487 claim against a company whose in-house counsel employee was allegedly involved in presenting perjured testimony to the New York City Commission on Human Rights. 642 F.Supp. 1456 (S.D.N.Y.1986), *aff'd*, 822 F.2d 324 (2d Cir.1987). The court stated that it saw "no reason why the employer of an attorney who has engaged in the proscribed conduct cannot be held derivatively liable based on the doctrine of respondeat superior." *Id.* at 1472. The Second Circuit, affirming the district court's opinion in *Rudow*, noted that a violation of Section 487 was a "garden variety tort." *Rudow*, 822 F.2d at 330.

On the other hand, the Second Circuit's conclusion in *Rudow* seems irreconcilable with the state cases cited above (which plainly hold that a client may not be held liable under Section 487 for acts by its counsel), given that a company with in-house counsel is not only that attorney's *employer*, but also his or her *client*. *See*

---

7. Given that Section 487(2), as discussed above, appears to relate to claims by clients against their own counsel, it would appear to have no applicability to Plaintiff's proposed amendment.

*Evans v. Artek Systems Corp.*, 715 F.2d 788, 792 (2d Cir.1983) (noting that an in-house lawyer's "client is the corporation"). Moreover, it may no longer be appropriate to rely on *Rudow,* given the Second Circuit's later certification of questions regarding Section 487 to the New York Court of Appeals, and the response of that court: in *Amalfitano v. Rosenberg,* 12 N.Y.3d 8, 874 N.Y.S.2d 868, 903 N.E.2d 265 (2009), the New York Court of Appeals noted that the history of Section 487 gave support to the "argument that the more appropriate context for analysis [of Section 487] is not the law applicable to comparable civil torts but rather criminal law," *id.* at 14, 874 N.Y.S.2d 868, 903 N.E.2d 265. Then, in a subsequent case, a New York court interpreted the *Amalfitano* decision to cut against the notion of *respondeat superior* liability under Section 487, stating that "[t]o the extent that the plaintiff advances one Federal District Court case, [*Rudow* ], holding that the employer of an attorney who engaged in conduct proscribed by Judiciary Law [Section] 487, as well as the attorney herself, could be held derivatively liable under respondeat superior, this Court finds it unpersuasive in light of the *Amalfitano* Court's discussion and declines to follow it." *Dupree v. Voorhees,* 25 Misc.3d 451, 883 N.Y.S.2d 454, 455 (Sup.Ct. Suffolk County 2009), *aff'd as modified on other ground,* 68 A.D.3d 810, 891 N.Y.S.2d 422 (2d Dep't 2009), *leave to appeal denied,* 15 N.Y.3d 705, 908 N.Y.S.2d 158, 934 N.E.2d 892 (2010).

■ In any event, even if *respondeat superior* liability were available on a claim under Section 487(1), Plaintiff's proposed claim would still be subject to dismissal because Plaintiff has not alleged facts capable of giving rise to the inference that Defendant acted with deceit or collusion during a judicial proceeding, as required for a claim brought pursuant to that Section.

As a preliminary matter, nothing in the proposed Amended Complaint can support a claim that Defendant—through the conduct of its in-house counsel—used deceit to obtain the original default judgment against Plaintiff in the Bronx Civil Court. While, as Plaintiff points out, the submission of a false affidavit or filing to a court in the course of a debt collection proceeding may give rise to a Section 487 claim (*see* Pl. Reply, at 9–10 (citing *Sykes v. Mel Harris & Assocs. LLC,* 757 F.Supp.2d 413, 428–29 (S.D.N.Y.2010), *Diaz v. Portfolio Recovery Assocs., LLC,* No. 10–3920, 2012 WL 661456, at *14–15 (E.D.N.Y. Feb. 28, 2012); *Isaacs v. Malen & Assocs., P.C.,* No. 13–2386(WHP), 2013 WL 4734904 (S.D.N.Y. Aug. 14, 2013))), Plaintiff makes no allegation that Defendant's in-house counsel engaged in such activity. Rather, Plaintiff alleges that the default judgment against her, which was allegedly secured through the use of a false affidavit of service, was secured in 2006 (Proposed Am, Compl. ¶ 9), and Plaintiff alleges no involvement in this matter by Defendant's in-house counsel prior to October 2010 (*see id.* ¶ 14).

That, then, would leave the alleged failure to return Plaintiff's money after the Civil Court directed its return as the only basis for a Section 487 claim. Plaintiff, however, has not plausibly alleged that any wrongdoing by Defendant's in-house counsel in that regard involved any "deceit or collusion ... with intent to deceive." Not only are Plaintiff's allegations of collusive conduct by Defendant overly vague and conclusory, but Plaintiff offers absolutely nothing to suggest that, in failing to return her funds, Defendant, through its in-house counsel, acted with the "requisite element of intentional deceit." *Alliance Network,* 987 N.Y.S.2d at 803, 2014 WL 1258222, at

*6; *accord O'Callaghan v. Sifre*, 537 F.Supp.2d 594, 596 (S.D.N.Y.2008).

Under the circumstances, permitting Plaintiff to plead a Section 487 violation against Defendant would be futile, and Plaintiff's motion for leave to add such a claim must be denied.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to amend (Dkt. 31) is granted as to the proposed claim for conversion and denied as to the proposed claim for violation of New York Judiciary Law Section 487.

Plaintiff is directed to file an amended complaint that is consistent with the terms of this Order, within one week of the date hereof. Defendant is directed to move, answer, or otherwise respond to the amended complaint no later than three weeks from the date that it is filed.

SO ORDERED